# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MELISSA AHLMAN, *et al*.,

*Plaintiffs-Appellees*,

v.

DON BARNES and ORANGE COUNTY, CALIFORNIA,

*Defendants-Appellants*,

On Appeal from the United States District Court, Central District of California
Case No. 8:20-cv-00835-JGB-SHK

## PLAINTIFFS' RESPONSE TO
## DEFENDANTS' OPENING BRIEF

Mitchell Kamin (SBN 202788)
mkamin@cov.com
Aaron Lewis (SBN 284244)
alewis@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
Facsimile: (424) 332-4749

Cassandra Stubbs (SBN 218849)
cstubbs@aclu.org
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
201 W. Main St., Suite 402
Durham, NC 27701
Telephone: (919) 682-5659
Facsimile: (919) 682-5961

*ATTORNEYS FOR PLAINTIFFS-APPELLEES*
*[Additional Counsel Listed on Signature Page]*

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................ 1

STATEMENT OF JURISDICTION ........................................................... 3

STATEMENT OF ISSUES ........................................................................ 4

STATEMENT OF THE CASE .................................................................... 4

SUMMARY OF ARGUMENT .................................................................. 14

ARGUMENT ........................................................................................... 17

I.  Standards of Review .................................................................... 17

II.  The Preliminary Injunction Order Expired by Operation of Law on August 24, 2020, Rendering This Appeal Moot ........................................... 18

III.  The District Court's Class Certification Ruling is Not Properly Before This Court ............................................................................................ 22

IV.  The District Court Did Not Abuse Its Discretion in Finding That Plaintiffs Have a Likelihood of Success on the Merits of Their Claims ...... 26

    A.  Plaintiffs Established A Likelihood of Success Regarding Defendants' Deliberate Indifference Under Both the Fourteenth and Eighth Amendments ................................................................ 26

        1.  The District Court Did Not Misapply the Law on Deliberate Indifference ......................................................... 27

            a)  Fourteenth Amendment – Objective Deliberate Indifference ................................................................ 28

            b)  Eighth Amendment – Objective and Subjective Deliberate Indifference ................................................. 30

        2.  The District Court's Factual Findings Were Not Clearly Erroneous ............................................................. 31

i

a)    The District Court's Findings Regarding Defendants' Failure to Provide Detainees with Adequate Personal Protective Equipment Were Not Clearly Erroneous ................................................... 33

b)    The District Court's Findings Regarding Defendants' Failure to Provide Detainees with Adequate Personal Hygiene and Cleaning Supplies Were Not Clearly Erroneous ........................................ 34

c)    The District Court's Finding That Defendants Failed to Implement Proper Quarantine and Isolation Protocols Was Not Clearly Erroneous............ 35

d)    The District Court's Finding That Defendants Failed to Implement Adequate Testing Protocols Was Not Clearly Erroneous............................................. 35

e)    The District Court's Finding That Defendants Failed to Allow for Social Distancing Was Not Clearly Erroneous ......................................................... 36

B.    The District Court Properly Found Plaintiffs Established a Likelihood of Success on Their ADA and Rehabilitation Act Claims................................................................................................ 38

1.    The District Court Properly Found That Plaintiffs Are Likely to Succeed on Their Disability Claims......................... 39

2.    Even if They Were Properly Before This Court, Defendants' New Arguments Are Unavailing and Rely on Overturned Law ................................................................ 42

C.    The District Court Properly Found Plaintiffs Exhausted Administrative Remedies ................................................................. 45

V.    The District Court Acted Within its Discretion in Finding That the Remaining Preliminary Injunction Factors Weigh in Plaintiffs' Favor ....... 48

A. The District Court Did Not Abuse its Discretion in Finding a Likelihood of Irreparable Injury.......................................................... 48

B. The District Court Was Within its Discretion in Finding That the Public Interest Weighed in Favor of a Preliminary Injunction............................................................................................ 51

VI. Defendants Have Abandoned Their Appeal of the District Court's Denial of Their *Ex Parte* Application to Dissolve the Preliminary Injunction ............................................................................................... 53

VII. Defendants' Federalism Arguments Are Misplaced ................................... 55

CONCLUSION ................................................................................................... 57

# TABLE OF AUTHORITIES

**CASES**                                                                                Page(s)

*Abdullah v. U.S. Sec. Assocs., Inc.*,
    731 F.3d 952 (9th Cir. 2013) ...................................................................*passim*

*Alaska Ctr. for Env't v. United States Forest Serv.*,
    189 F.3d 851 (9th Cir. 1999) ...................................................................19

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ...................................................................26, 55

*Barnes v. Ahlman,*
    140 S. Ct. 2620 (Mem); 2020 WL 4499350 (Aug. 5, 2020) ...........................52

*Bernhardt v. County of Los Angeles*,
    279 F.3d 862 (9th Cir. 2002) ...................................................................19

*Brown v. Plata*,
    563 U.S. 493 (2011) ...............................................................................53

*Busby v. Bonner*,
    __ F. Supp. 3d __, 2020 WL 2108713 (W.D. Tenn., June 10, 2020) ................44

*Busby v Bonner*,
    No. 20-cv-2359-SHL (W.D. Tenn. June 10, 2020) ......................................25

*Coolidge v. New Hampshire*,
    403 U.S. 443 (1971) ...............................................................................56

*Coreas v. Bounds*,
    No. CV TDC-20-0780, 2020 WL 5593338 (D. Md. Sept. 18, 2020) ...............25

*Doe v. Trump*,
    957 F.3d 1050 (9th Cir. 2020) ..................................................................23

*Edmo v. Corizon, Inc.,*
    935 F.3d 757 (9th Cir. 2019) ...................................................................20

*Entertainment Research Grp., Inc. v. Genesis Creative Grp., Inc.*
    122 F.3d 1211 (9th Cir. 1997) ..................................................................54

*Farmer v. Brennan*,
  511 U.S. 825 (1994)..................................................................................27, 28

*Foster v. Carson*,
  347 F.3d 742 (9th Cir. 2003) ...............................................................21

*Fraihat v. Immig. & Customs Enf't*,
  No. EDCV 19-1546 JGB (SHKx), ---F. Supp. 3d ---, 2020 WL
  1932570, (C.D. Cal. Apr. 20, 2020) ....................................................25

*Gomes v. Acting Sec'y, U.S. Dep't of Homeland Sec.*,
  No. 20-cv-453-LM, 2020 WL 2113642 (D.N.H. May 4, 2020)...................20, 25

*Gonzalez v. U.S. Immigration & Customs Enf't.*,
  __ F.3d __, No. 20-55175, 2020 WL 5494324 (9th Cir. Sept. 11,
  2020) .....................................................................................................26

*Gordon v. Cty. of Orange*,
  888 F.3d 1118 (9th Cir. 2018) ..............................................................27

*Gray v. Cty. of Riverside*,
  No. EDCV 13-00444-VAP, 2014 WL 5304915 (C.D. Cal. Sept. 2,
  2014) .....................................................................................................26

*Hall v. Beals*,
  396 U.S. 45 (1969)................................................................................22

*Hawkins v. Comparet-Cassani*,
  251 F.3d 1230 (9th Cir. 2001) ..............................................................55

*Hernandez Roman v. Wolf*,
  No. 20-55436 (9th Cir. Sept. 23, 2020) ...............................................25

*Immigrant Assistance Project of Los Angeles Cty. Fed'n of Labor
  (AFL-CIO) v. I.N.S.*,
  306 F.3d 842 (9th Cir. 2002) ................................................................24

*Johnson v. Couturier*,
  572 F.3d 1067 (9th Cir. 2009) .......................................................18, 19, 35

*Jones v. Blanas*,
  393 F.3d 918 (9th Cir. 2004) ................................................................29

*Karnoski v. Trump*,
926 F.3d 1180 (9th Cir. 2019) ................................................................55

*Kitlutsisti v. ARCO Alaska, Inc.*,
782 F.2d 800 (9th Cir. 1986) .................................................................21

*Kode v. Carlson*,
596 F.3d 608 (9th Cir. 2010) .........................................................18, 49

*Lathrem v. Town of Oro Valley*,
173 F.3d 860 (9th Cir. 1999) .................................................................21

*Lemire v. Cal. Dep't of Corr. & Rehab.*,
726 F.3d 1062 (9th Cir. 2013) ........................................................28, 32

*Mays v. Dart*,
No. 1:20-cv-02134 (N.D. Ill. Apr. 9, 2020)........................................25

*Mayweathers v. Newland*,
258 F.3d 930 (9th Cir. 2001) .................................................................20

*McGary v. City of Portland*,
386 F.3d 1259 (9th Cir. 2004) ..............................................................40

*Meyer v. Portfolio Recovery Assocs., LLC*,
707 F.3d 1036 (9th Cir. 2012) ..............................................................18

*Miller v. Fairchild Indus., Inc.*,
797 F.2d 727 (9th Cir. 1986) .................................................................54

*Monzon v. City of Murrieta*,
966 F.3d 946 (9th Cir. 2020) .................................................................54

*Nutraceutical Corp. v. Lambert*,
139 S. Ct. 710 (2019)..............................................................................23

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) .................................................................26

*Rabkin v. Or. Health Scis. Univ.*,
350 F.3d 967, 977 (9th Cir. 2003) ........................................................52

*Rizzo v. Goode*,
423 U.S. 362 (1976)................................................................56

*Rodriguez Alcantara v. Archambeault*,
No. 20-CV-0756 DMS (AHG), --- F. Supp. 3d ---, 2020 WL
2315777 (S.D. Cal. May 1, 2020)...........................................25

*Rosas v. Baca*,
No. CV 12-00428 DDP SHX, 2012 WL 2061694 (C.D. Cal. June
7, 2012) ........................................................................26

*Ross v. Blake*,
136 S. Ct. 1850 (2016)...........................................................47

*Savino v. Souza*,
No. 20-10617-WGY, --- F. Supp. 3d ---, 2020 WL 1703844 (D.
Mass. Apr. 8, 2020) ..........................................................25

*Swain v. Junior*,
2020 WL 2161317 (11th Cir. 2020) ...............................38, 39

*Torres v. Milunsic*,
No. 20-4450-CBM-PVC(x) (C.D. Cal. July 14, 2020) ......................25

*Toyota Motor Mfg. v. Williams*,
534 U.S. 184 (2002)..........................................................42, 43

*United States v. Elias*,
921 F.2d 870 (9th Cir. 1990) .............................................50

*United States v. Patrin*,
575 F.2d 708 (9th Cir. 1978) .............................................41

*United States v. Sec'y, Fla. Dep't of Corr.*,
778 F.3d 1223 (11th Cir. 2015) ......................................20, 21

*Valentine v. Collier*,
956 F.3d 797 (5th Cir. 2020)...............................................38

*Valentine v. Collier*,
No. 4:20-CV-1115, 2020 WL 3491999 (S.D. Tex. June 27, 2020) ............25, 38

*Wade v. Kirkland*,
118 F.3d 667 (9th Cir. 1997) ................................................................18

*Yanes v. Martin*,
No. 1:20-cv-216-MSM-PAS (D.R.I. May 20, 2020)........................................25

*Yates v. Collier*,
677 Fed. App'x 915 (5th Cir. 2017) ................................................................20

*Zepeda Rivas v. Jennings*,
No. 20-cv-02731-VC, --- F. Supp. 3d. ---, 2020 WL 2059848 (N.D.
Cal. Apr. 29, 2020) ................................................................25

*Zepeda v. U.S. I.N.S.*,
753 F.2d 719 (9th Cir. 1983) ................................................................54

STATUTES

18 U.S.C. § 3626(a)(1)(A) ................................................................20

18 U.S.C. § 3626(a)(2)................................................................1, 20

28 U.S.C. § 1292(a)(1)................................................................3

42 U.S.C. §1997e(a)................................................................46

42 U.S.C. § 12102 (4)(A)................................................................43

Americans with Disabilities Amendments Act of 2008, PL 110–325,
September 25, 2008, 122 Stat. 3553. ......................................*passim*

OTHER AUTHORITIES

28 C.F.R. § 35.108(b) ................................................................43

28 C.F.R. § 35.108(d)(2)(iii)(F)................................................................43

28 C.F.R. § 35.164 ................................................................45

Fed. R. App. P. 5................................................................1, 9, 23, 24

Fed. R. Civ. P. 23(f)................................................................*passim*

## INTRODUCTION

The preliminary injunction at issue in this appeal expired on August 24, 2020. Therefore, the appeal is moot. Defendants now seek an advisory opinion on an injunction that no longer exists, and to flout the Prison Litigation Reform Act ("PLRA") by attempting to stuff the record with post-injunction facts allegedly showing improved conditions in the Jail, while refusing to recognize the PLRA's 90-day expiration rule, 18 U.S.C. § 3626(a)(2)—*the purpose of which is to account for changing conditions.* Defendants cannot have their cake and eat it too.

Defendants' disregard for the rules extends to their appeal of provisional class certification. Having neither sought nor received the permission required under Fed. R. Civ. P. 23(f) and Fed. R. App. P. 5, that aspect of the appeal is likewise inappropriate. On these two grounds, this Court should reject Defendants' appeal in its entirety.

If the Court reaches the question of whether the District Court abused its discretion in granting the preliminary injunction—which it need not—Defendants' arguments fare no better. Under the mismanagement of the Orange County Sheriff's Department ("OCSD"), COVID-19 infected over 300 detainees—more than ten percent of the Orange County Jail (the "Jail")'s total population—in a matter of weeks. The District Court entered a preliminary injunction requiring Defendants to abide by basic health guidelines promulgated by the Centers for Disease Control

("CDC"). At that time, Defendants averred under oath that they were already in compliance with CDC Guidelines and, indeed, with the exact requirements that the Court subsequently incorporated into the preliminary injunction. But, after weighing the evidence in the form of dozens of declarations submitted by Defendants and Plaintiffs alike, the District Court found that, notwithstanding Defendants' clear knowledge and understanding of the CDC Guidelines and of the threat the novel coronavirus posed, Defendants' "actual compliance ha[d] been piecemeal and inadequate." ER 14. Indeed, the declarations of dozens of detainees demonstrated that detainees were packed into dayrooms, sharing the same air and bathrooms without the possibility of social distancing, that detainees lacked the supplies necessary to clean themselves and their cells, that detainees received filthy, blood-stained makeshift cloth face coverings, that symptomatic individuals were not being separated from asymptomatic ones, and that even symptomatic detainees were not consistently tested.

Even if this case were not moot, the District Court's order should be affirmed on appeal. Defendants attempt to create a new record on appeal to support their extraordinary request to overturn a validly imposed preliminary injunction that was entered to address clear, life-threatening constitutional and statutory violations. Although Defendants seek to supplement the record with selective statistics on recent rates of infection in the Jail, that evidence was *not* before the District Court

2

when it entered the preliminary injunction at issue. Moreover, Defendants fail to accurately depict the reality of COVID-19's spread in the Jail during and after the term of the injunction. Sadly, the number of confirmed cases continues to rise, and the threat to detainees still looms.

Nothing in the District Court's strikingly detailed order constitutes an abuse of discretion. To the contrary, after weighing the evidence before it, the District Court fashioned an appropriate remedy to address a life-threatening calamity, and, to the extent this Court reaches the merits of that decision, that remedy should be affirmed.

## STATEMENT OF JURISDICTION

Except to the extent that mootness has vitiated that jurisdiction, this Court had jurisdiction to review the preliminary injunction order pursuant to 28 U.S.C. § 1292(a)(1).

Notably, as Plaintiffs have set forth in their motion to dismiss (Case No. 20-55568, Dkt. 37.[1]; Case No. 20-55668, Dkt. 11), 28 U.S.C. § 1292(a)(1) does not extend to jurisdiction over an interlocutory appeal of a class certification order, and, thus, this Court lacks jurisdiction to entertain Defendants' arguments related to the District Court's grant of provisional class certification.

---

[1] Citations styled as "Dkt." refer to entries filed in Case No. 20-55568 unless otherwise noted.

**STATEMENT OF ISSUES**

1. Whether under the PLRA's 90-day deadline, the District Court's preliminary injunction expired on August 24, 2020, rendering this appeal moot.

2. Whether Defendants may appeal provisional class certification where they neither sought nor were granted permission to appeal under FRCP 23(f); and if so, whether the District Court abused its discretion by provisionally certifying the class.

3. Whether the District Court abused its discretion by granting an injunction on the basis of Plaintiffs' Eighth and Fourteenth Amendment claims or their ADA and Rehabilitation Act claims.

**STATEMENT OF THE CASE**

Faced with rampant COVID-19 infection rates and inadequate protection in the crowded and poorly ventilated facilities of the Orange County Jail, on April 30, 2020, Plaintiffs filed a complaint on behalf of two classes of individuals alleging that the conditions of confinement in the Jail violated the Eighth Amendment, the Fourteenth Amendment, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act. ER 579. They sought release of individuals who were medically-vulnerable to the infection and the enactment of measures to mitigate the risk of COVID-19 transmission in the Jail. On May 11, 2020, Plaintiffs filed a motion for provisional class certification, and an *ex parte* application and motion for

a temporary restraining order and a preliminary injunction seeking implementation of constitutionally sufficient conditions at the Jail and releases for medically-vulnerable and disabled plaintiffs.  ER 525.  Plaintiffs' request for preliminary relief relied upon 36 detailed, sworn statements by persons detained at the Jail as well as two expert declarations, showing that Defendants had failed to take reasonable preventative measures as recommended by public health experts.  These declarations described crowded, dangerous conditions, and flagrant disregard of CDC recommendations for testing, quarantine and isolation practices, and provisions of soap, disinfectant, and personal protective equipment ("PPE").

The declarations showed that people housed at the Jail were forced to sleep in tightly packed quarters and placed in dayrooms in which maintaining adequate distance was infeasible.  Supp. ER 063 ¶¶ 7; Supp. ER 058  ¶ 12; Supp. ER 024-025 ¶¶ 18,19.  Detainees were subject to unsanitary conditions, with inadequate cleaning supplies, like watered-down and dirty buckets of cleaning solution, and insufficient personal hygiene items and PPE.  Supp. ER 003 ¶¶ 12, 15, 16, 18, 19;  Supp. ER 009 ¶ ¶ 17, 19; Supp. ER 018 ¶ 15; Supp. ER 053 ¶ 13; Supp. ER 023 ¶ 14; Supp. ER 070 ¶ 16.  They were provided inadequate amounts of basic personal hygiene supplies like hand soap, even though frequent hand washing is one of the primary measures recommended by public health officials to limit the spread of COVID-19.  Supp. ER 023 ¶ 13; ER 561.  Defendants provided improvised face coverings,

fashioned from t-shirts, towels, or "soiled sheets, with stains of feces and blood," that were rarely laundered or replaced. Supp. ER 022-024 ¶¶ 10, 11, 14–17; Supp. ER 065 ¶ 16; Supp. ER 070 ¶ 13.

Defendants' practices for infected individuals exposed others in the Jail to risk of the disease. Incarcerated people were forced to handle the bedding and personal effects of individuals who were known to have tested positive for COVID-19 without PPE. Supp. ER 035 ¶ 10; Supp. ER 047 ¶ 12; Supp. ER 058 ¶ 13. Quarantine and isolation protocols for infected individuals were inconsistent and inadequate. *See* Supp. ER 153 ¶ 14; Supp. ER 157 ¶ 3; Supp. ER 037 ¶ 25; Supp. ER 025-027 ¶¶ 20, 22, 24. Individuals were moved throughout the Jail in ways that mixed quarantined and non-quarantined detainees and allowed wide spread of infection. *See* Supp. ER 037 ¶¶ 22, 25; Supp. ER 041 ¶ 7; Supp. ER 046-047 ¶ 11. The inappropriate quarantines contributed to at least two concentrated outbreaks: (1) an outbreak in housing units C-15 and C-16 in the Central Men's Jail, where at least 20 men housed together after individuals reported symptoms went on to develop COVID-19 and; (2) an outbreak in the worker's dorm unit after a detainee who had reported symptoms was left with the others in the unit, leading to as many as 80% eventually becoming ill. Supp. ER 026 ¶ 23; Supp. ER 035-037 ¶¶ 9-12, 19-22; Supp. ER 047 ¶¶ 12-13; Supp. ER 057-058 ¶ 8; Supp. ER 052-053 ¶¶ 8-10.

Defendants opposed class certification and argued that preliminary relief was unnecessary because they "had, at a minimum, already implemented all of the mitigation measures" Plaintiffs requested. ER 318. They relied upon a declaration by Commander Joseph Balicki of the Orange County Sheriff's Department's Custody Operation Command, who submitted a sworn declaration attesting specifically to full compliance with the relief requested. ER 376. The District Court held a telephonic hearing on May 19, 2020 on the two motions and issued an order on May 26, 2020 granting provisional class certification and imposing a preliminary injunction. ER 1. With respect to the provisional class certification motion, the District Court found that Plaintiffs had shown that they satisfied the requirements of numerosity, commonality, typicality and adequacy and noted a series of decisions by federal courts around the country provisionally certifying classes in similar suits. ER 11-12. The Court rejected many of the arguments by Defendants as "wholly untethered to the law," and noted that many of Defendants' arguments—based on the law governing a separate form of class certification under Rule 23(b)(3)—were inapplicable given that Plaintiffs sought certification under Rule 23(b)(2), not Rule 23(b)(3). ER 12 n. 9.

After weighing the evidence submitted by the parties on the motion for a preliminary injunction, the District Court concluded that Plaintiffs were likely to succeed on the merits of their claims under the Eighth Amendment and ADA and

Rehabilitation Act. It found that the "risk of harm within the Jail is undeniably high," and that contrary to the Defendants' stated policy to comply with CDC Guidelines, "actual compliance has been piecemeal and inadequate." ER 14. The court credited the corroborated and "exacting detail" set out in the witness declarations submitted by Plaintiffs, showing that the detainees were "not given enough soap to frequently wash or clean their living spaces," that "Defendants allow quarantined individuals to use the same common spaces as the general populations," that "social distancing is impossible in common areas," and that "Defendants are not testing all suspected cases." ER 14. It found that over 300 cases had spread in the Jail in little over a month, and that over 50 of these cases had occurred in the last two weeks. Balancing the equities, the District Court concluded they "tilt heavily" in Plaintiffs' favor with respect to requiring compliance with the CDC Guidelines. It found Plaintiffs had not shown that the equities required release of all medically vulnerable and disabled inmates, particularly when Defendants could potentially "mitigate many of the risks presented by COVID-19 with better compliance with the CDC Guidelines." ER 20.

Relying on the Board of Community and State Corrections ("BSCC") rated capacity, which is determined according to state regulations, the District Court found that the Jail had failed to achieve its own target of a 50% reduction in population. ER 4-5 & 4 n.5. The District Court entered a preliminary injunction order requiring protective measures, like quarantine and provisions of cleaning and disinfectant

materials.  As this court noted, "[d]efendants could not establish irreparable injury because the injunction did nothing more than require them to implement the very same measures that Commander Balicki had specifically stated, under oath, had already been put in place."  Dkt. 19-1 at 5.

On May 28, 2020, Defendants filed a Notice of Appeal, only appealing the denial of the preliminary injunction order.  ER 23.  They did not file a petition for permission to appeal the provisional grant of class certification under Federal Rule of Civil Procedure 23(f) and Federal Rule of Appellate Procedure 5.

Defendants also filed an *ex parte* application in the District Court to stay the proceedings pending appeal, relying in part on a new declaration by Commander Balicki stating that compliance with the protective measures—the same protective measures that his previous declaration claimed the Jail had already implemented— would be infeasible or raise safety concerns.  The District Court denied the motion, finding Defendants had failed to show irreparable injury when the injunction required only those measures Defendants had sworn they had previously adopted. Defendants then sought an emergency stay in this Court pending appeal.  Dkt. 13-1. This Court agreed with the District Court's finding on irreparable injury, rejecting Defendants' newly minted—and contradictory—argument that compliance would create safety and security concerns.  Dkt. 19-1 at 6 ("Defendant's new position cannot be reconciled with Balicki's sworn statement in the district court, which

represented not only that Defendants were willing and able to implement each of the specific measures requested by Plaintiffs (and later incorporated into the injunction), but that they had in fact already implemented them.").

> Defendants attempted to supplement the appellate record by filing "an emergency motion to supplement the record" on June 10, 2020, with new facts that purportedly showed that the injunction was no longer required. They asserted that all new COVID-19 cases in the Jail were the result of new bookings, and that there was no longer a risk of spread in the Jail. DKT 15-1. This Court instructed Defendants that such evidence was outside of the scope of its appeal: This evidence, which post-dates the injunction and is offered for the first time here, on appeal, is simply not relevant to whether Defendants are likely to succeed on the merits of their appeal. Review of a preliminary injunction is 'restricted to the limited and often nontestimonial record available to the district court when it granted or denied the injunction motion.' *Zepeda v. U.S. Immigration & Naturalization Serv.*, 753 F.2d 719, 724 (9th Cir. 1983); see also, *Wilson v. Williams*, __ F.3d __, 2020 WL 3056217, at *1 (6th Cir. June 9, 2020).

Dkt. 19-1 at 10-11. The Court ruled that new evidence should be considered in the first instance by the District Court, and *sua sponte* remanded the case for the limited purpose of allowing the parties to present any evidence of changed circumstances that might warrant modification or dissolution of the preliminary injunction. Dkt. 19-1 at 11-12.

On remand, Defendants refused to consent to expedited discovery regarding their new factual claims of changed circumstances in the Jail. Supp. ER 165. On June 18, 2020, Plaintiffs filed a motion seeking limited expedited discovery in anticipation of Defendants' motion to modify or dissolve the preliminary injunction.

Supp. ER 162. The following day, Defendants filed an *ex parte* application with the District Court to dissolve the injunction or in the alternative, to set an evidentiary hearing on an expedited basis to allow further showing of evidence in support of dissolving the injunction. ER 41. Defendants based their application on the existence of "significant changed circumstances," that resulted in only a "very low risk" of contracting COVID-19 within the Jail, but they described that change as the result of "prompt and critical protocols implemented well before the Court's May 26th Order." ER 44. While the motion to dissolve the preliminary injunction was pending, Defendants filed their first uncontested motion to delay the filing of their merits brief in this case by thirty days. Dkt. 21.

On June 26, 2020, the District Court denied Defendants' *ex parte* application to dissolve the injunction as "premature." ER 33. The District Court noted that the Defendants' assertion of changed circumstance was based on their own evidence, and held that before the "Court can conclude that the circumstances have truly changed in such a way to warrant dissolution of the injunction, Plaintiffs must have the opportunity to evaluate Defendants' evidence and determine whether other evidence contradicts it." ER 33. It ordered expedited discovery to "serve both parties' interests to quickly determine the actual state of the outbreak." *Id*. The District Court also ordered Defendants to submit weekly compliance reports while the injunction remained in effect. ER 34.

Rather than seeking to file a motion to modify or dissolve the preliminary injunction after this expedited discovery, Defendants once again sought an immediate stay pending appeal in this Court and filed a second appeal of the denial of the motion to modify or dissolve the preliminary injunction. ER 535; Case No. 20-55668, Dkt. 2-1.[2] Defendants claimed there was "zero transmission" of the virus in the Jail and asked for an early termination of the ninety-day preliminary injunction. Dkt. 26-1 at 18-21 (alleging "zero transmission" and quoting the language of the PLRA that preliminary injunctions will expire after 90 days, absent other findings).

On July 2, 2020, this Court denied Defendants' motion for a stay, concluding that the District Court's decision to allow for expedited discovery before ruling on the motion to dissolve was "particularly appropriate" in light of "Defendant's conflicting statements about their ability to comply with the requirements of the injunction." Case No. 20-55668, Dkt. 4 at 3.

Almost three weeks after the July 2, 2020 denial of their application to stay the proceedings, on July 21, 2020, Defendants filed their second motion to extend the timeline for filing their opening brief appealing the denial of the preliminary

[2] Defendants' initial application was denied for lack of jurisdiction absent the filing of a new or amended notice of appeal. ER 534. Defendants filed a second notice of appeal purporting to challenge the preliminary injunction, the denial of their application to dissolve the preliminary injunction and, for the first time, class certification. Supp. ER 176-179. Defendants then filed another emergency motion for a stay of the preliminary injunction pending appeal. Dkt. 2-1.

12

injunction for another thirty days, until August 31, 2020. Dkt. 31. On July 22, 2020, this Court granted the unopposed extension for the opening brief in the original appeal.

On July 21, 2020 Defendants filed an Emergency Application for Stay of Injunctive Relief Pending Appeal in the U.S. Supreme Court. Supp. ER 192 (exhibits omitted).[3] This application for stay was granted on August 5 (without explanation), staying the preliminary injunction pending disposition of the appeal in this Court and disposition of any petition for writ of certiorari. Two of the four dissenting justices joined a written dissent that found Defendants unlikely to succeed on the merits, and not entitled to injunctive relief in part because of Defendants' "bad behavior," including their factual misrepresentations to the District Court and requests for extensions while simultaneously characterizing the need for review as urgent. Dkt. 35, 7-8.

On August 24, 2020 the preliminary injunction in this case expired automatically pursuant to the PLRA, and on August 25, 2020 Plaintiffs filed a Motion to Dismiss this appeal as moot because there is no longer a live controversy. Case No. 20-55568, Dkt. 37; Case No. 20-55668, Dkt. 11. Defendants opposed the motion to dismiss the appeal. Case No. 20-55568, Dkt. 41; Case No. 20-55668, Dkt.

---

[3] While this stay motion was pending, Defendants filed a stipulated motion to consolidate the two appeals and consolidate the briefing schedule. Dkt. 33.

13

15. On September 11, 2020, Plaintiffs filed their Reply in support of their Motion to Dismiss. Case No. 20-55568, Dkt. 42; Case No. 20-55668, Dkt. 16. That motion remains pending.

## SUMMARY OF ARGUMENT

This appeal is moot because the preliminary injunction has expired by operation of law, under the PLRA. Even if it were not moot, Defendants have failed to establish that the District Court abused its discretion in issuing preliminary injunctive relief, a claim that this Court has already once rejected. This Court should dismiss the appeal as moot, or, in the alternative, affirm the District Court's grant of a preliminary injunction for the following reasons:

1. This appeal is moot. The Prison Litigation Reform Act limits preliminary injunctive relief to 90 days, unless the court has made additional factual findings to renew the injunction. The District Court did not make such findings. Accordingly, the preliminary injunction at issue in this appeal expired on August 24, 2020. Neither party has any legal obligations arising from an expired injunction, and therefore any opinion this Court could issue would be advisory.

2. Fed. R. Civ. P. 23(f) establishes requirements for challenging class certification, which is not an appeal as of right. These include a requirement to petition to appeal within 14 days of the certification order. Defendants

14

never properly petitioned to appeal and did not notice an appeal of the class certification issue until well over two weeks after the District Court's order. Additionally, Defendants have not identified a proper basis of jurisdiction for appealing the class certification order. Accordingly, Defendants have forfeited their right to appeal class certification and their arguments on this point should be disregarded. Moreover, even if this Court nevertheless chooses to entertain Defendants' untimely, procedurally improper effort to seek review of the class certification decision, the District Court did not abuse its discretion in granting class certification.

3. Defendants fail to establish that the District Court abused its discretion in finding Plaintiffs had demonstrated a likelihood of success on their Fourteenth and Eighth Amendment deliberate indifference claims. The District Court applied the correct legal standards under both claims, made factual findings based in the record and applied the correct legal standard to those facts. Defendants cannot meet the high bar of establishing that the District Court's factual findings are clearly erroneous.

4. Defendants attempt to raise new arguments for the first time on appeal to challenge aspects of Plaintiffs' ADA and Rehabilitation Act claims that were not considered by the District Court. Even if they had been considered, their new arguments are baseless, as is their single challenge to Plaintiffs' ADA

and Rehabilitation Act claims that was before the District Court. Defendants fail to establish an abuse of discretion by the District Court in finding Plaintiffs are likely to succeed on the merits of their disability claims.

5. Plaintiffs fully exhausted the grievance process as required by the PLRA. Plaintiffs each followed the Jail's formal grievance process. In some cases, Jail staff refused to treat grievances as such or refused to appropriately process appeals. In such situations, individuals have exhausted all administrative remedies available to them. In all cases, individual Plaintiffs pursued the formal grievance process until Jail officials would not allow them to do so any longer and they had no more administrative remedies available. That is, quite literally, the definition of exhaustion. Defendants' arguments to the contrary would require this Court to jettison the facts found by the District Court and instead rely on Defendants' unilateral, contested, and inaccurate version of the facts. Plaintiffs have clearly met the PLRA's exhaustion requirements.

6. The equities strongly tip in Plaintiffs' favor. While Plaintiffs face the gravest form of irreparable injury—sickness, and even death—Defendants can assert no irreparable injury because they stated under oath that they were already complying with the preliminary injunction's terms and with the CDC's Guidelines when the District Court issued the preliminary injunction. Nor did the District Court abuse its discretion in finding that the injunction is in the

public interest, because the outside community is adversely affected by COVID-19 outbreaks in the Jail and it is in the public interest for the Jail to provide adequate conditions to those in custody.

7. Defendants' federalism arguments are unavailing. While Defendants contend that they would need a court "permission slip" to make necessary changes within the Jail, Defendants fail to recognize that the injunction creates a basic constitutional and statutory floor with which they must comply. There is nothing preventing Defendants from *doing more* and providing better protections to the people inside the Jail.

## ARGUMENT

### I. Standards of Review

This Court must resolve questions of law, including questions of standing and jurisdiction *de novo*. *See, e.g., Wade v. Kirkland*, 118 F.3d 667, 669 (9th Cir. 1997) (holding mootness is a question of law which is reviewed *de novo*); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1040 (9th Cir. 2012) (holding the issue of whether the District Court's class certification order is properly before an appellate court is reviewed *de novo*).

To the extent this Court reviews the merits of the District Court's class certification decision, that review is governed by an abuse of discretion standard. *Id.*

Likewise, a District Court's decision to grant a preliminary injunction is reviewed for abuse of discretion. *Johnson v. Couturier*, 572 F.3d 1067, 1079 (9th Cir. 2009).

A review for abuse of discretion is "limited and deferential" and "does not extend to the underlying merits of the case." *Johnson*, 572 F.3d at 1078 (internal quotation omitted). The abuse of discretion standard recognizes that a District Court may make determinations that fall within a broad range of permissible conclusions, provided the District Court did not apply the law erroneously. *See Kode v. Carlson*, 596 F.3d 608, 612-13 (9th Cir. 2010) (per curiam). "As long as the district court got the law right, it will not be reversed simply because the appellate court would have arrived at a different result if it had applied the law to the facts of the case." *Johnson*, 572 F.3d at 1079.

Where the District Court makes findings of fact as part of its decision, those findings are reviewed "under the clearly erroneous standard," which an appellate court will reverse "only if they are (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the record." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013) (internal quotations omitted).

## II. The Preliminary Injunction Order Expired by Operation of Law on August 24, 2020, Rendering This Appeal Moot

This appeal is moot and should be dismissed because the preliminary injunction that Defendants challenge has expired by operation of law.

It is well settled that "[a]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002). "Generally, an action is mooted when the issues presented are no longer live and therefore the parties lack a legally cognizable interest for which the courts can grant a remedy." *Alaska Ctr. for Env't v. United States Forest Serv.*, 189 F.3d 851, 854 (9th Cir. 1999).

Under the PLRA, a preliminary injunction about jail conditions "shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period." 18 U.S.C. § 3626(a)(2).

The District Court did not extend its May 26, 2020 preliminary injunction by making the required findings under 18 U.S.C. § 3626(a)(1)(A), nor did it make its order "final" within 90 days of entering injunctive relief. 18 U.S.C. § 3626(a)(2). Accordingly, the May 26, 2020 preliminary injunction automatically expired 90 days after entry, on August 24, 2020. *Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001) ("Because the district court in the present case did not make either of the preliminary injunctions at issue final within 90 days, both injunctions expired pursuant to [§ 3626(a)(2)]"). *See also United States v. Sec'y, Fla. Dep't of Corr.*, 778 F.3d 1223, 1228-29 (11th Cir. 2015) (holding that an appeal of a preliminary

19

injunction was moot because the District Court "did not issue an order finalizing its [preliminary-injunction] order" and "[a]s a result, the preliminary injunction expired by operation of law" 90 days later); *Yates v. Collier*, 677 Fed. App'x 915, 918 (5th Cir. 2017) (finding appeal of a preliminary injunction issued under the PLRA moot "because the prisoners allowed their preliminary injunction to expire."). Because the District Court did not make findings under subsection (a)(1) within that 90-day period, nor did it make the order final, the preliminary injunction automatically expired.

The expiration of the preliminary injunction renders this appeal moot. *Edmo v. Corizon, Inc.*, 935 F.3d 757, 782 (9th Cir. 2019) ("Generally, the expiration of an injunction challenged on appeal moots the appeal"); *Lathrem v. Town of Oro Valley*, 173 F.3d 860 (9th Cir. 1999) ("Because the preliminary injunction has expired on its own terms, the appeal is moot"); *Kitlutsisti v. ARCO Alaska, Inc.*, 782 F.2d 800, 801 (9th Cir. 1986) ("At the expiration of the injunction, there was no longer any immediate controversy between the parties, and thus this appeal appears moot."); *Sec., Fla. Dep't of Corr.*, 778 F.3d at 1229 ("The preliminary injunction in the present case passed on to injunction heaven on March 6, 2014. And with it died this appeal, unless some exception to the mootness doctrine can save it."). A declaration that the now-expired preliminary injunction was an abuse of discretion at the time it was entered would be a purely advisory opinion. *See Foster v. Carson*, 347 F.3d

20

742, 746-48 (9th Cir. 2003) (holding that a challenge to temporary budget reduction plan was moot after the plan expired, notwithstanding the possibility that a similar budget shortfall might occur and the political branches might adopt a similar budget reduction plan, because "a mere possibility that something might happen is too remote to keep alive a case as an active controversy.").

Defendants' brief does not address, much less dispute, that the PLRA applies to the District Court's Order. To the contrary, Defendants invoke the PLRA in arguing that Plaintiffs should have further exhausted their administrative remedies, Dkt. 38 at 19, 34-37, and that the preliminary injunction needed to be more "narrowly drawn," Dkt. 38 at 43-44. Defendants have offered no arguments in their merits brief contending that an exception to the mootness doctrine applies here. Instead, their merits brief fails to address the mootness issue altogether and assumes that the preliminary injunction remains unexpired and that it could continue indefinitely. *See, e.g.*, Dkt. 38 at 4 (insisting that because of the injunction, "***Defendants cannot change course***" (bold and italics in original), that "[t]hey are strapped to specific measures, backed by the threat of contempt," and that the injunction "may inflict further injury" to them in the future).

Nor does Defendants' desire for Supreme Court review of the now-expired preliminary injunction change the consequences of its mootness. The mootness doctrine applies to the Supreme Court just as it applies to lower courts. *See Hall v.*

21

*Beals*, 396 U.S. 45, 48 (1969) (declining to rule on constitutionality of earlier statute that the legislature amended during litigation below, because "[t]he case has therefore lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law.").

The appeal should therefore be dismissed.

**III. The District Court's Class Certification Ruling is Not Properly Before This Court**

Defendants inexplicably failed to follow both the Federal Rules of Civil Procedure and the Federal Rules of Appellate Procedure and have neither sought, nor been granted, permission to appeal the provisional grant of class certification. Therefore their arguments should not be considered.

Interlocutory appeals of class certifications are not appeals as of right. *See* Fed. R. Civ. P. 23(f). To challenge class certification, a party is required to file a petition for permission to appeal under Fed. R. Civ. P. 23(f) within 14 days after the order is entered. Specifically, Rule 23(f) states, "[a] court of appeals may permit an appeal from an order granting or denying class-action certification under this rule, but not from an order under Rule 23(e)(1). A *party must file a petition for permission to appeal with the circuit clerk within 14 days after the order is entered . . . .*" Fed. R. Civ. P. 23(f) (emphasis added). As this language makes clear, a party may not simply notice an appeal of a class certification order. At no point have Defendants filed a petition for permission to appeal in compliance with Fed. R. App. P. 5, which

governs the contents of a petition for permission to appeal in the Ninth Circuit and allows Plaintiffs ten days to oppose any such petition.

Furthermore, Defendants failed to raise this issue within the 14-day timeframe required by Rule 23(f). The requirement to timely appeal is mandatory and "the Federal Rules of Appellate Procedure single out Civil Rule 23(f) for inflexible treatment." *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 715 (2019). This recent Supreme Court decision makes clear that an untimely appeal of class certification is not proper and its merits should not be considered.

Rule 23(f)'s requirements apply equally in the context of provisional class certification. *See Doe v. Trump*, 957 F.3d 1050, 1096 (9th Cir. 2020) (Bress, dissenting) (explaining that "[d]espite its softer-sounding name, provisional class certification is still governed by the requirements of Rule 23."); *Immigrant Assistance Project of Los Angeles Cty. Fed'n of Labor (AFL-CIO) v. I.N.S.*, 306 F.3d 842, 849 n. 4 (9th Cir. 2002) ("[a]s an independent ground for denial of plaintiffs' Motion for Provisional Class Certification, the District Court determined that the Motion was untimely in violation of Local Rule 23(f)(3).").

The District Court provisionally certified the class and subclasses in this matter on May 26, 2020. ER 1-21. Defendants did not petition to appeal class certification and their May 28, 2020 notice of appeal made no mention of class

certification. ER 23.[4]  Not until Defendants filed their second notice of appeal on June 29, 2020 did they mention the issue of class certification for the first time.  This was over a month after the provisional class was certified and well past the 14 days afforded to challenge certification under 23(f).  Supp. ER 176-179.  Additionally, even if this belated notice was sufficient, Defendants never filed the required petition pursuant to Fed. R. App. P. 5.

Consequently, the District Court's provisional class certification decision is not properly before this Court, and the arguments regarding class certification in Defendants' opening brief are improper and should not be considered.

To the extent this Court nevertheless wishes to consider the merits of Defendants' class certification arguments, those arguments lack merit.  The District Court's findings of numerosity, commonality, typicality, and adequate representation are consistent with factually similar decisions in multiple COVID-19 prison, jail, and detention cases in this circuit and around the country.  *See, e.g.*, *Hernandez Roman v. Wolf*, No. 20-55436, at 15-16 (9th Cir. Sept. 23, 2020)*; Coreas v. Bounds*, No. CV TDC-20-0780, 2020 WL 5593338, at *1 (D. Md. Sept. 18, 2020); *Torres v. Milunsic*, No. 20-4450-CBM-PVC(x), Dkt. 45, at 48 (C.D. Cal. July 14, 2020); *Valentine v. Collier*, No. 4:20-CV-1115, 2020 WL 3491999, at *14 (S.D.

---

[4] Indeed, this Court issued a scheduling order in appeal number 20-55568 and noted that "[t]he appeal filed May 28, 2020 is a preliminary injunction appeal."  Case No. 20-55568, Dkt. 2.

Tex. June 27, 2020); *Busby v Bonner*, No. 20-cv-2359-SHL, Dkt. 38, at 17 (W.D. Tenn. June 10, 2020); *Yanes v. Martin*, No. 1:20-cv-216-MSM-PAS, Dkt. 21, at *1-2 (D.R.I. May 20, 2020); *Gomes v. Acting Sec'y, U.S. Dep't of Homeland Sec.*, No. 20-cv-453-LM, 2020 WL 2113642, at *1-3 (D.N.H. May 4, 2020); *Rodriguez Alcantara v. Archambeault*, No. 20-CV-0756 DMS (AHG), --- F. Supp. 3d ---, 2020 WL 2315777, at *7 (S.D. Cal. May 1, 2020); *Zepeda Rivas v. Jennings*, No. 20-cv-02731-VC, --- F. Supp. 3d. ---, 2020 WL 2059848, at *1 (N.D. Cal. Apr. 29, 2020); *Fraihat v. Immig. & Customs Enf't*, No. EDCV 19-1546 JGB (SHKx), --- F. Supp. 3d ----, 2020 WL 1932570, at *16-20 (C.D. Cal. Apr. 20, 2020); *Mays v. Dart*, No. 1:20-cv-02134, Dkt. 47, at 9 (N.D. Ill. Apr. 9, 2020); *Savino v. Souza*, No. 20-10617-WGY, --- F. Supp. 3d ---, 2020 WL 1703844, at *5-8 (D. Mass. Apr. 8, 2020). As the District Court explained in its decision, these findings and conclusions are also consistent with binding, longstanding case law in this circuit—none of which Defendants have made an effort to distinguish. *See e.g., Gonzalez v. U.S. Immigration & Customs Enf't.*, __ F.3d __, No. 20-55175, 2020 WL 5494324 (9th Cir. Sept. 11, 2020); *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (abrogated on other grounds by *Johnson v. California*, 543 U.S. 499 (2005)); *Parsons v. Ryan*, 754 F.3d 657, 672 (9th Cir. 2014); *Gray v. Cty. of Riverside*, No. EDCV 13-00444-VAP, 2014 WL 5304915, at *40 (C.D. Cal. Sept. 2, 2014); *Rosas v. Baca*, No. CV 12-00428 DDP SHX, 2012 WL 2061694, at *5 (C.D. Cal. June 7,

2012).  Additionally, Defendants are flatly incorrect when they assert that none of the class representatives have disabilities within the meaning of the ADA.  As set forth in greater detail in Section III.C, Defendants' mischaracterization of the scope of the ADA is based on outdated case law that was superseded more than a decade ago by the ADA Amendments Act of 2008.  For all of the above reasons, the District Court did not abuse its discretion in granting provisional class certification.

## IV. The District Court Did Not Abuse Its Discretion in Finding That Plaintiffs Have a Likelihood of Success on the Merits of Their Claims

### A. Plaintiffs Established A Likelihood of Success Regarding Defendants' Deliberate Indifference Under Both the Fourteenth and Eighth Amendments

Plaintiffs represent a putative class comprised of both pretrial and post-conviction detainees held in the Jail.  Each is governed by a different variation on the deliberate indifference constitutional standard.

With respect to the pretrial class, Plaintiffs must establish objective deliberate indifference, in violation of the Fourteenth Amendment.  To prove objective deliberate indifference, a plaintiff must show that "the defendant did not take reasonable available measures to abate [a substantial risk of harm] even though a reasonable official in the circumstances would have appreciated the high degree of risk involved."  *Gordon v. Cty. Of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018), *cert. denied sub nom. Cty. of Orange, Cal. v. Gordon*, 139 S. Ct. 794 (2019); *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  To satisfy this standard, a plaintiff must prove

that the defendant's conduct was "objectively unreasonable," which requires proving "more than negligence but less than subjective intent—something akin to reckless disregard." *Gordon*, 888 F.3d at 1125 (quoting *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071)). Notably, this does not require actual awareness of the level of risk on the part of the official—merely a failure to meet the objective standard. *Gordon*, 888 F.3d at 1125 n.4.

To establish deliberate indifference towards the post-conviction class, Plaintiffs must demonstrate both objective deliberate indifference and subjective deliberate indifference, in violation of the Eighth Amendment. Under the Eighth Amendment standard, a defendant acts with deliberate indifference when they: (1) "know[] that inmates face a substantial risk of serious harm," and (2) "disregard[] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847; *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1078 (9th Cir. 2013).

The District Court properly found that Plaintiffs had established a likelihood of success on their Fourteenth Amendment and Eighth Amendment deliberate indifference claims. Defendants' arguments to the contrary are wrong because they are based on distortions of the law and fail to give appropriate deference to the District Court's factual determinations.

      1.    The District Court Did Not Misapply the Law on Deliberate Indifference

a)   Fourteenth Amendment – Objective Deliberate Indifference

Objective deliberate indifference under the Fourteenth Amendment is governed by the *Gordon v. County of Orange* test set forth above. Defendants argue that the District Court abused its discretion in two ways: (1) by improperly importing subjective awareness into the test, and (2) making factual findings that were "clearly erroneous" because they relied on detainee testimony and because they involved calculations of infection rate and jail population that relied on different assumptions than Defendants' own calculations. Neither argument is meritorious. The District Court correctly identified the objective deliberate indifference standard, made factual findings based on the evidence submitted that were not clearly erroneous, and found that Defendants' failure to adopt adequate infection control measures satisfied all elements of objective deliberate indifference. *See* ER 13-17. The District Court did not improperly import subjective awareness into the test. Rather, the District Court outlined how a reasonable official in the circumstances would have made themselves aware of the CDC Guidelines, appreciated the high risk of failing to implement those guidelines, and then meaningfully implemented the guidelines. The District Court found that although Defendants made themselves aware of the guidelines and were capable of implementing them, they failed to actually implement them, resulting in avoidable COVID-19 infections. ER 14-17. This failure, the District Court held, showed that Defendants were acting with objective

28

deliberate indifference because "an institution that is aware of the CDC Guidelines and able to implement them but fails to do so demonstrates that it is unwilling to do what it can to abate the risk of the spread of infection." ER 17. For the logic of Defendants' position to hold, this Court would need to hold that any reasonable jail official in the circumstances would have willfully blinded themselves to the existence and substance of the CDC Guidelines. This is nonsensical because it would, in effect, make the Fourteenth Amendment standard *less* stringent than the Eighth Amendment standard. *Cf. Jones v. Blanas*, 393 F.3d 918, 933 (9th Cir. 2004) (explaining that pre-adjudication constitutional protections for conditions of confinement must be at least as strong as post-adjudication protections because "purgatory cannot be worse than hell").

Defendants next argue that the District Court imposed a higher standard on the Jail by requiring "[f]ull and consistent" compliance with the CDC guidance rather than permitting them to "nominally comply with some portions of the Guidelines sometimes." ER 17. This is also meritless. Defendants vigorously contended to the District Court that they were capable of complying with the CDC Guidelines, had adopted policies that conformed to those guidelines, and were faithfully implementing all of those policies. The District Court, while acknowledging that the CDC guidance "is not a statute, nor is it a mandate," ER 16, found that it offered useful "expert medical advice regarding measures needed to

29

limit the spread of COVID-19," and that Defendants' failure to implement those measures, particularly while insisting they were capable of doing so, constituted objective deliberate indifference. That finding was not "illogical," "implausible," or "without support in inferences that may be drawn from the record." *Abdullah*, 731 F.3d at 956. (internal quotations omitted). Accordingly, the District Court's conclusion that "failure to comply [with the CDC guidance] demonstrates deliberate indifference toward the health and safety of the inmates" was a correct application of the objective deliberate indifference standard and was not an abuse of discretion. ER 17.

Defendants cannot establish that the District Court misapplied the law with respect to the Fourteenth Amendment objective deliberate indifference standard.

> b) Eighth Amendment – Objective and Subjective Deliberate Indifference

Defendants argue that the District Court's determination that the Defendants were subjectively and objectively deliberately indifferent was based solely on a finding that Defendants had not "***eliminated*** the risk of COVID-19 infection completely." Opening Br. at 38 (bold and italics in original). However, that language does not appear anywhere in the District Court's opinion, and this paraphrasing mischaracterizes the District Court's analysis. In fact, the District Court held that Defendants' deliberate indifference was due to the repeated warnings they had received from community organizations and their own employees about the

risks of COVID-19 spreading uncontrolled in the Jail, their knowledge that the CDC

Guidelines represented expert medical advice regarding measures to limit the spread

of COVID-19, their failure to do more than "nominally" and "sometimes" comply

with those guidelines despite repeatedly assuring the Court that they had already

fully implemented them, and that as a result of those failures, a person incarcerated

in the Jail prior to entry of the preliminary injunction was approximately one

hundred times more likely to become infected with COVID-19 than the average

resident of Orange County. ER 13-18. These fact findings are sufficient to meet

both the objective and subjective prongs of the deliberate indifference standard. *See*

*Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013).[5] The

District Court's analysis was based on the appropriate legal standard for Eighth

Amendment deliberate indifference and was no abuse of discretion.

> 2. The District Court's Factual Findings Were Not Clearly Erroneous

Defendants argue that the District Court relied on clearly erroneous factual

findings to conclude that Defendants have acted with deliberate indifference. Their

---

[5] Defendants rely on an out-of-circuit case to contend that the subjective prong of deliberate indifference can be satisfied only by a subjective belief by Defendants that the measures they are taking are inadequate. Dkt. 38 at 42-43. That proposition is inconsistent with how the Ninth Circuit has formulated this test—a formulation drawn directly from the U.S. Supreme Court's language. This Court has made clear that the subjective prong is satisfied by "show[ing] that prison officials 'kn[e]w [ ] of and disregard[ed]' the substantial risk of harm, but the officials need not have intended any harm to befall the inmate; 'it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.'" *Lemire*, 726 F.3d at 1074 (quoting *Farmer v. Brennan,* 511 U.S. 825, 842 (1994)).

arguments, however, fail to establish that the District Court's findings were illogical, implausible or without support from the record. *Abdullah*, 731 F.3d at 956. The District Court reviewed all of the evidence, including the numerous declarations of detainees inside the Jail submitted by Plaintiffs and the three declarations of OCSD officials submitted by Defendants. The Court explained that "[t]o the extent that the OCSD officer testimony submitted by Defendants conflicts with the inmate testimony submitted by Plaintiffs, the Court finds the inmate testimony more credible." ER 14. This was so because the OCSD testimony was "general, brief, and only broadly describe[d] the Jail's policies . . . ." *Id*. In contrast, the detainees' declarations "describe[ ] repeatedly and in exacting detail [Appellants'] failures to implement the CDC Guidelines." *Id*. The Court properly analyzed and weighed the evidence in the record to support its finding that "although [Appellees] may have a policy to comply with the CDC Guidelines, actual compliance has been piecemeal and inadequate." ER 14.

The internal inconsistencies in Defendants' declarations further justify the District Court's factual findings in favor of the Plaintiffs. In his May 12, 2020 declaration, Commander Balicki stated that "[t]here is not a single 'mitigation effort' outlined in Plaintiffs' Complaint that has not already been implemented in the jails or effectuated by OCSD." ER 376. His declaration goes on to say that, despite this sworn testimony to the contrary, detainees did not receive daily laundry, and other

declarations from Jail staff clarify that the Defendants were not conducting daily symptom or temperature checks. *See* ER 388-389. Defendants' inconsistencies undermine their credibility and entitle them to no deference.[6]

The District Court's factual findings regarding each of the areas within the CDC guidance were logical, plausible and supported by the record and are therefore far from clearly erroneous. Defendants have failed to establish otherwise.

> a) The District Court's Findings Regarding Defendants' Failure to Provide Detainees with Adequate Personal Protective Equipment Were Not Clearly Erroneous

Proper PPE can halt the spread of COVID-19 both on surfaces and in the air. *See* ER 415-417. Here, the District Court credited declarations stating that "the cloth masks provided are not replaced for weeks or are made from blood- and feces-stained sheets." ER 6. Defendants do not, and have not, refuted these claims. Where Plaintiffs' evidence is based in the record and not contradicted, the District Court's crediting of that evidence cannot be "clearly erroneous." *Abdullah*, 731 F.3d at 956.

Defendants have repeatedly asserted that the injunction's requirement for daily temperature and symptom checks endanger Jail staff and detainees. *See* Opening Br. at 3. This argument ignores the injunction's complementary

---

[6] Further, after the District Court entered the preliminary injunction, despite having claimed that they had implemented all aspects of the relief, Defendants claimed that they would "be irreparably harmed if [] required to comply with the Order." ER 201.

33

requirement for Jail staff to wear adequate PPE when interacting with detainees, for everyone's protection. ER 21. Defendants do not explain why the risks of staff interacting with detainees for medical diagnosis purposes *while wearing adequate PPE* necessarily outweigh the benefits of identifying symptomatic COVID-19 cases that would otherwise go undiagnosed and contribute to further infections.

> b) The District Court's Findings Regarding Defendants' Failure to Provide Detainees with Adequate Personal Hygiene and Cleaning Supplies Were Not Clearly Erroneous

The CDC recommends enhanced cleaning, disinfecting and personal hygiene to prevent the spread of COVID-19. *See* ER 400. The District Court found that detainees "do not receive sufficient cleaning supplies" and only intermittently receive soap. ER 6. To reach these conclusions, the District Court weighed the Defendants' three inconsistent and vague declarations against the declarations of 36 individuals from inside the Jail. ER 6.[7] Such fact finding in the face of conflicting evidence is properly conducted by the District Court and is entitled to deference from this Court. *Johnson*, 572 F.3d at 1079 ("[a]s long as the district court got the law right, it will not be reversed simply because the appellate court would have arrived at a different result if it had applied the law to the facts of the case."). The

---

[7] *See* USSC Decision on Application for a Stay (Sotomayor, dissenting) at 7 ("[If] the Jail misrepresented its actions under oath to the District Court, then why should the Jail benefit from the Court's equitable discretion?").

Defendants offer no argument that these findings are clearly erroneous, as opposed to findings that they merely disagree with. Opening Br. at 41.

      c)      The District Court's Finding That Defendants Failed to Implement Proper Quarantine and Isolation Protocols Was Not Clearly Erroneous

Quarantine and isolation protocols are key to preventing spread of COVID-19 in any environment. *See* ER 411-414. The District Court found that the Jail's quarantine efforts are "inconsistent" and that their failure to properly quarantine new arrivals and detainees exposed to COVID-19 led to at least one "cluster of new infections." ER 5. The District Court credited testimony that a detainee was not quarantined after a trip to the emergency room. ER 5. The District Court found that even when the Jail followed its inadequate quarantine protocols, the quarantine was "only a partial one" because different quarantined groups mixed together and used spaces that were available to non-quarantined detainees. ER 5. The Court did not abuse its discretion when it credited this testimony and found that Defendants' quarantine and isolation protocols were insufficient.

      d)      The District Court's Finding That Defendants Failed to Implement Adequate Testing Protocols Was Not Clearly Erroneous

The District Court also found the Jail's testing protocols to be inadequate. The Court credited testimony that detainees were refused tests when they were exposed to a COVID-19-positive individual, even when their cellmates were

symptomatic or were housed in units with multiple confirmed cases. ER 6. Further, detainees who had tested positive were released into the general population to further infect their cellmates and staff. ER 6. Without broad testing, many infections in the Jail go undetected, thwarting the effectiveness of contact tracing efforts and allowing infections to slip through the cracks and lead to further outbreaks. Defendants have failed to establish how any of these findings were clearly erroneous.

> e) The District Court's Finding That Defendants Failed to Allow for Social Distancing Was Not Clearly Erroneous

Despite Defendants' repeated mischaracterizations, the record before the District Court showed the Jail remained crowded and at more than 50% capacity, contrary to Correctional Health Services' recommendations and CDC recommendations. *See* ER 400 ("Both good hygiene practices and social distancing are critical in preventing further transmission.").[8] Defendants have continuously provided misleading statistics based on untested assumptions to both this Court and the District Court seeking to contradict this finding. *See* Opening Br. at 8. Defendants' assertion that the Jail achieved greater than 50% population reductions is based on a methodology that Defendants never disclosed to the District Court, and assumes that the Jail's "actual capacity" is significantly higher than the rated

---

[8] Furthermore, the vast majority of the population reduction at the Jail in March and April of this year was not due to actions taken by Defendants, but because of the actions of a third party outside of Defendants' control: an order by the California Supreme Court temporarily setting zero bail for certain offenses. *See* ER 364-369.

capacity authorized by the Board of State and Community Corrections ("BSCC"). The BSCC is a state governmental body that inspects jails and determines, inter alia, whether they are providing the minimum square footage per person and amenities required by California law; its capacity calculation methodology is publicly available and published in both state regulations and the BSCC's website. In determining that the Jail failed to achieve a 50% population reduction, the Court relied on the BSCC rated capacity of 3,975 beds. Supp. ER 133. The District Court's decision to rely on the BSCC rated capacity instead of Defendants' inflated capacity assumptions was not clearly erroneous.

As the District Court found, Defendants' failure to implement facility-wide social distancing allows any asymptomatic carriers, as well as some symptomatic individuals, to mingle with the rest of the population. ER 6. The District Court credited numerous declarations stating that detainees sleep close together in their cells, cannot distance in common areas, spend time in crowded holding cells, and are regularly transferred within the facility. ER 6. Under these circumstances, spread of COVID-19 from person to person is inevitable. *See* ER 3 ("COVID-19 has proven to be extremely contagious: it is airborne and survives on surfaces for days.") (citing the CDC Guidelines). These were not clearly erroneous findings.

Defendants' citations to out-of-circuit deliberate indifference cases are inapposite. Defendants use *Valentine v. Collier*, 956 F.3d 797 (5th Cir. 2020) and

*Swain v. Junior*, 2020 WL 2161317 (11th Cir. 2020) to argue that incidence of disease is not in and of itself evidence of deliberate indifference. Opening. Br. at 39. Plaintiffs do not argue otherwise, nor did the District Court rely on such reasoning. The facts of those cases also make them easily distinguishable, and neither case suggests any error by the District Court here. *Valentine*, for example, relied heavily on the fact that plaintiffs did not attempt to exhaust the formal grievance process. It also found that the injunction was so finely detailed that it could not be followed without imposing significant burden (whereas here Defendants swore that they were already implementing the requirements of the injunction). In *Swain*, the appellate court found that the trial court improperly found that the rise in cases was proof of subjective deliberate indifference. Here, by contrast, the District Court made no such error and instead carefully examined both the objective and subjective deliberate indifference prongs.

The District Court was well within its discretion to credit the evidence of imminent danger to detainees and find that Plaintiffs were likely to succeed on the merits of their claims.

B.   The District Court Properly Found Plaintiffs Established a Likelihood of Success on Their ADA and Rehabilitation Act Claims

The District Court properly found that Plaintiffs are likely to succeed on their ADA and Rehabilitation Act claims. On appeal, Defendants devote most of their attention to arguments that were not before the District Court and that were therefore

waived.  Defendants' cursory challenge to the one disability issue that *was* before the District Court fails to identify any error by the District Court.  Moreover, even if Defendants' new, improper arguments were properly before this Court, they are unavailing, and rely on case law that has been expressly overruled by subsequent legislation.

           1.       The District Court Properly Found That Plaintiffs Are Likely to Succeed on Their Disability Claims

In their pleadings and declarations before the District Court, Plaintiffs made out a *prima facie* case of disability discrimination under the ADA and Section 504 of the Rehabilitation Act ("Section 504").  *See McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).  They asserted that they are individuals with disabilities as defined under the ADA and Section 504, and supported these claims with declarations from disabled Plaintiffs.  ER 542 at n.33; ER 549.  They identified their specific disabilities.  ER 542 at n.33; Supp. ER 016; Supp. ER 029; Supp. ER 071; Supp. ER 074; Supp. ER 080; Supp. ER  091; Supp. ER 097; Supp. ER 100.  They explained that they are "qualified" to participate in the Jail's programs, including "adjudication of their cases; safe, constitutional living conditions during confinement; and medical care and rehabilitative services to prepare for reentry after release."  ER 549.  They alleged that they are being denied reasonable modifications and are subject to discriminatory methods of administration, and that this conduct is

discrimination under the ADA and Section 504. *Id.*, *see also McGary*, 386 F.3d at 1265-66.

In their response and pleadings before the District Court, Defendants effectively conceded most of these elements. Specifically, Defendants did not challenge or refute disabled Plaintiffs' assertions that they are people with disabilities as defined under the ADA and Section 504. Defendants did not challenge or refute Plaintiffs' assertions that they were facing disability discrimination and unequal access to the Jail's services, programs and activities. Defendants did not challenge or dispute Plaintiffs' assertions that the Jail is failing to make reasonable modifications and is failing to ensure nondiscriminatory methods of administration. But before this Court, Defendants now raise numerous new arguments that they never asserted below. They newly attempt to challenge whether disabled Plaintiffs are people with disabilities for the purposes of the ADA and Section 504. They newly attempt to challenge Plaintiffs' description of "services, programs, or activities" to which they are entitled to equal access. They newly assert that the modifications Plaintiffs seek would be a fundamental alteration. They newly assert that Plaintiffs' requests for nondiscriminatory incarceration and methods of administration are not properly cognizable under the ADA and Section 504. None of these claims is properly before this Court. All of these issues were waived by

40

Defendants' failure to raise them below. *See United States v. Patrin*, 575 F.2d 708, 712 (9th Cir. 1978).

The *only* specific challenge to Plaintiffs' disability claims that the Defendants raised before the District Court, and the only ADA dispute properly before this Court, is whether the alleged discrimination was "by reason of disability." ER 329-330. The District Court properly denied Defendants' assertion that Plaintiffs were required to plead disparate treatment in order to make out a claim of disability discrimination. ER 18. The District Court correctly noted that this Circuit has expressly rejected Defendants' arguments. *Id.* (citing *McGary v. City of Portland*, 386 F.3d 1259, 1265-66 (9th Cir. 2004)). Defendants do not explain why they believe the District Court erred in reaching this conclusion. On appeal, they simply re-assert their theory that disability discrimination requires Plaintiffs to demonstrate disparate treatment through "a comparison of Plaintiffs' treatment with the treatment of others who lack Plaintiffs' alleged disabilities," and cite an earlier, unpublished case that is not directly on point. Opening Br. at 47 (*citing Marlor v. Madison Cty., Idaho*, 50 Fed. App'x 872, 873 (9th Cir. 2002)). Defendants fail to engage with the District Court's reasoning, point to any error, or provide any explanation for why they believe published, clear case law from this Circuit could or should be departed from.

Based on Plaintiffs' claims and Defendants' concessions and limited, unavailing opposition, the District Court properly found that Plaintiffs showed a likelihood of success on the merits of their claims under the ADA and Section 504. This Court should affirm the District Court's well-reasoned conclusions on the limited issue that Defendants raised in the District Court, and decline to consider the arguments that Defendants waived below.

2. Even if They Were Properly Before This Court, Defendants' New Arguments Are Unavailing and Rely on Overturned Law

On appeal, Defendants devote considerable attention to asserting that Plaintiffs are not people with disabilities as defined under the ADA and Section 504. Opening Br. at 44-45. Their arguments rely on *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 197 (2002), for the proposition that the standard of disability under the ADA and Section 504 is a "demanding standard." Opening Br. at 45. However, the *Toyota* standard was expressly rejected and superseded by Congress over a decade ago with the passage of the Americans with Disabilities Amendments Act of 2008. Congress specifically stated that one of its purposes in passing this statute was "to reject the standards enunciated by the Supreme Court in *Toyota Motor Manufacturing v. Williams*, 534 U.S. 184 (2002)" and replace that standard with one that "should not demand extensive analysis" of whether an individual's impairment constitutes a disability. ADA Amendments Act of 2008, PL 110–325, September 25, 2008, 122 Stat. 3553.

Under the *operative* version of the ADA, in effect since January 1, 2009, the "definition of disability . . . shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted." 42 U.S.C. § 12102 (4)(A). This broad construction plainly incorporates disabled Plaintiffs. All disabled Plaintiffs have conditions that substantially impair major life activities and major bodily functions as defined under the ADA and Section 504. Plaintiffs Ortiz, Castillo, Trace, and Wagner have conditions that Congress has affirmed "should easily be concluded" to be disabilities. 28 C.F.R. § 35.108(d)(2)(iii)(F) (cancer); (H) (diabetes); (I) (epilepsy). The other disabled Plaintiffs have conditions that clearly meet the statutory definition of disability. *See* 28 C.F.R. § 35.108(b) (asthma substantially limits the major life activity of breathing, hepatitis substantially limits major bodily function of the hemic function, rheumatoid arthritis and compromised immune system substantially limit the major bodily function of immune function); *see also* ER 589-593; ¶¶ 15, 16, 18, 19, 20, 21, 22, 23; *see also Busby v. Bonner*, __ F. Supp. 3d __, 2020 WL 2108713, at *9-10 (W.D. Tenn., June 10, 2020) (certifying subclass of disabled plaintiffs based on CDC guidelines for COVID-19-vulnerability).

Defendants' additional new claims on appeal are equally unpersuasive. Disabled Plaintiffs have demonstrated that, as a result of their disabilities, and as a result of the Jail's failure to make reasonable modifications, they are denied equal

43

access to the Jail's programs, including an equal chance to participate in their defense, and equal, safe access to daily Jail activities including meals, medical care, and prerelease programming. Plaintiffs are not alleging inadequate medical care or inadequate treatment *for* their disability as their ADA theory – they are alleging unequal *access* to programs, including medical care, because they are forced to choose between foregoing medical care (or meals, or phone calls) and risking their lives through unacceptable risk of COVID-19 exposure. This impossible choice is made so because of Plaintiffs' disabilities. Defendants' failure to make reasonable modifications to mitigate this impossible choice is discrimination "by reason of" disability, and the District Court did not abuse its discretion in reaching this conclusion. *See McGary*, 386 F.3d at 1265-66.

Finally, Defendants claim–newly on appeal–that the District Court should have dismissed Plaintiffs' claims altogether after declining to release disabled Plaintiffs.[9] But neither Plaintiffs' pleadings nor the ADA or Section 504 counsel such action. Plaintiffs' pleadings, including their motion for preliminary relief, seek release *and* changes in conditions for any disabled Plaintiffs who were not

---

[9] Defendants also appear to suggest that Plaintiffs' requested relief would require a "fundamental alteration" to the jail's functioning. Opening Br. at 48. In order to raise such a defense, Defendants were required to raise it before the District Court. They did not. In addition, in order to raise a fundamental alteration defense, Defendants are required to support that defense with a written statement of reasoning prepared by the head of the OCSD. 28 C.F.R. § 35.164. Defendants' glancing reference to the fundamental alteration defense, for the first time on appeal and without the required written reasoning, is improper.

immediately released. *See* ER 634 ¶ 108 ("If any Disability Subclass members are not immediately released, the ADA and Rehabilitation Act require Defendants to implement reasonable modifications within the jail to reduce the risk of infection among the Disability Subclass members"); Supp. ER 011-014 (proposed order requiring jail to "adopt mitigation efforts to protect all Class Members not immediately released"). Having denied Defendants' request for release under habeas corpus, the District Court properly ordered, as Plaintiffs requested, reasonable modifications to conditions to reduce disabled Plaintiffs' likelihood of contracting and dying from COVID-19 within the Jail. This was within the relief requested by Plaintiffs. This relief is also consistent with ADA regulations. Even if a public entity is *not* required to provide a specific modification or conduct a specific action, as the District Court determined here with respect to release, the entity is still required to "take any other action that would not result in [a fundamental] alteration or [undue] burdens but would nevertheless ensure that, to the maximum extent possible, individuals with disabilities receive the benefits of services provided by the public entity." 28 C.F.R. § 35.164. The District Court's order below was an application of this well-established principle and was not an abuse of discretion.

C. The District Court Properly Found Plaintiffs Exhausted Administrative Remedies

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The District Court found Plaintiffs exhausted all available administrative remedies, and that finding was not clear error. *See* ER 13.

Prior to filing suit, each individual Plaintiff filed an emergency grievance requesting release or, alternatively, provision of adequate sanitation supplies, PPE, and space to be able to maintain at least 6 feet of distance from other people. They then waited for responses. Several Plaintiffs received verbal denials of their grievances. In these cases, deputies informed Plaintiffs that because the issues raised in the grievances were not redressable through the grievance system, they were not logged in the Jail's system and were not assigned a Jail Incident Number. Because the grievance procedure instructs that appeals can only be processed if they include the original grievance's Jail Incident Number, these Plaintiffs have no other remedies available to them. *See* Supp. ER 107-108; ER 567-569; ER 570-572; ER 573-575; ER 576-578; *see also* Supp. ER 110-111.

One Plaintiff submitted a grievance that did not receive any response before his mental health decompensated. Supp. ER 113-114. Others received written denials, which they timely appealed; these appeals were either denied or never received a response. *See* Supp. ER 116-117; Supp. ER 119-120; Supp. ER 122-123; Supp. ER 125-126; Supp. ER 128-129.

In all cases, individual Plaintiffs pursued the formal grievance process, following to completion each step that was actually available to them. That is all the PLRA requires. *See Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) (courts must apply the PLRA exhaustion requirement "to the real-world workings of prison grievance systems" and individuals need not exhaust procedures that exist only in theory and are "not capable of use to obtain relief").

Defendants respond by pointing to OCSD's Custody and Court Operations Manual and questioning whether the Plaintiffs were expressly told by staff that their grievances and appeals were denied, that no appeals were available, or even that their grievances would not be treated as grievable issues at all. But that is in fact what happened. Plaintiffs testified in sworn declarations that they grieved and appealed until the point at which their appeals were denied or OCSD staff refused to further move their grievances through the Jail's formal process. Defendants did not rebut these declarations with any contradictory evidence, and the District Court credited the declarations, which was within its sound discretion. As the District Court recognized, the PLRA only requires Plaintiffs to exhaust the grievance procedures that are in fact available to them. ER 13 (citing *Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017) ("When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies."); *Karas v. Marciano*, 2017 WL 6816858, at *4 (C.D. Cal.

Nov. 13, 2017) ("When a prisoner submits a [grievance] but never receives a response thereto, the administrative remedies are 'rendered effectively unavailable by defendants' actions.'")). Plaintiffs exhausted all available grievance procedures before filing this lawsuit, and they supported their compliance with the PLRA's grievance requirements with sworn testimony. The District Court's finding the same was not clear error.

## V. The District Court Acted Within its Discretion in Finding That the Remaining Preliminary Injunction Factors Weigh in Plaintiffs' Favor

### A. The District Court Did Not Abuse its Discretion in Finding a Likelihood of Irreparable Injury.

The District Court acted within its discretion in recognizing that Plaintiffs would be irreparably injured and that the public interest weighed in favor of a preliminary injunction. The court's findings were logical, plausible, and supported by the record. *See Abdullah*, 731 F.3d at 956. The District Court found that "risk of harm within the Jail is undeniably high: . . . Because the virus is contagious, absent some dramatic change in course, the uninfected inmates are likely to contract the disease if they remain in the Jail. Undoubtedly some will die." ER 14. The court's conclusion was amply supported by the record.

The record before the court showed that, "[a]t least 369 inmates at the Orange County Jail [had] been infected with COVID-19." ER 3. Further, testimony submitted by Defendants showed that the Jail was overcrowded and continued to

house medically vulnerable individuals, and that quarantine of new arrivals was only partial. ER 5. Declarations of incarcerated individuals further demonstrated that "inconsistent quarantine practices have led to a cluster of new infections in at least one instance." *Id*. The record further reflected that it was "impossible to remain six feet apart" in many parts of the Jail, that incarcerated individuals "do not receive sufficient cleaning supplies to keep their living areas clean and disinfected," and that "[o]n many occasions . . . inmates were not tested after exposure to an individual with a confirmed case of COVID-19." ER 6. On this record, a determination that preliminary injunctive relief was necessary was certainly "within a broad range of permissible conclusions." *Kode*, 596 F.3d at 612-13.

Defendants argue that the preliminary injunction was improper because the Court lacked "evidence that the preliminary injunction reduced the risk any more than Defendants' measures." Opening Br. at 50. This argument is unmoored from the standard of review and contrary to the factual record before the District Court, which evidenced dangerous shortcomings in the Jail's social distancing, quarantine, and testing practices, and provision of cleaning and personal hygiene supplies and protective equipment. ER 5-6. Instead, Defendants rely on cherry-picked information from one moment, weeks after the preliminary injunction was in place. Opening Br. at 49. This information has no bearing on the soundness of the District Court's ruling on the record before it and is not appropriately before this Court on

appeal. *United States v. Elias*, 921 F.2d 870, 874 (9th Cir. 1990) ("Documents or facts not presented to the district court are not part of the record on appeal.").

Even more problematic, evidence ordered by the District Court belies Defendants' extra-record evidence and shows the on-going threat to Plaintiff class members in the Orange County Jail. The recent evidence from Defendants' compliance reports directly refutes the factual representations Defendants made to this Court and to the Supreme Court regarding the purportedly "zero" risk of transmission within the Jail. Even with the increased protection of the injunction, such as improved face coverings, laundry, additional spacing, and improved sanitation, Defendants' compliance reports show that the Jail continued to experience internal community spread of cases inside its walls. *See e.g.*, Supp. ER 186-191 (reporting on July 21, a long term detainee in modular housing–not a new arrestee–tested positive for COVID-19, and ultimately infected 16 other individuals); Supp. ER 180-185 (reporting the premature release of an infected detainee into group housing, leading to other infections of detainees in Defendants' custody). Defendants' ongoing failures to properly distance, screen, and isolate inmates have led to the continued exposure of class members to the virus while in custody, including in close quarters while in transit and at court. Supp. ER 186-191;

Supp. ER 180-185. All told, over the two and a half months that the preliminary injunction was in effect, there were 112 new cases in the Jail.[10]

And while the Defendants improperly attempted to take credit for population reductions that occurred as the result of the statewide-zero bail order, that statewide order expired and the Jail population has once again risen, exacerbating the crowded conditions of the Jail. Supp. ER 188; ER 652.

In these circumstances, the District Court had ample basis to find that Plaintiffs faced the real risk of irreparable harm absent a preliminary injunction.

B.     The District Court Was Within its Discretion in Finding That the Public Interest Weighed in Favor of a Preliminary Injunction.

The District Court also did not abuse its discretion when it concluded that the public interest favored a preliminary injunction requiring compliance with CDC guidelines and that Defendants would not be irreparably injured. The court reasoned that "there can be no public interest in exposing vulnerable persons to increased risk of severe illness and death." ER 19. Further, the court concluded that "compliance with the CDC guidelines promotes the orderly administration of jails—an inmate population with a skyrocketing rate of infection is far from orderly." ER 19.

---

[10] COVID-19 in OC Jails, (updated May 26, 2020) https://www.ocsd.org/documents/sheriff/COVIDStats5.26.20.pdf; COVID-19 in OC Jails, (updated Aug. 4, 2020) https://www.ocsd.org/documents/sheriff/COVIDStats8.4.20.pdf.

Defendants make no argument that this judgment was "clearly against the logic and effect of the facts," as would be required to reverse the District Court's order. *Rabkin v. Or. Health Scis. Univ.*, 350 F.3d 967, 977 (9ᵗʰ Cir. 2003). Indeed, when the District Court granted the preliminary injunction at issue, Defendants represented under oath that "[t]here is not a single 'mitigation effort' outlined in Plaintiffs' Complaint that has not already been implemented in the jails." ER 376. As Justice Sotomayor observed, "[i]f the Jail is already doing everything required by the injunction, then what irreparable harm does the injunction pose?" *Barnes v. Ahlman,* 140 S. Ct. 2620(Mem); 2020 WL 4499350 (Aug. 5, 2020) (Sotomayor, J. dissenting).

Instead, Defendants seek to relitigate the issue, arguing that the preliminary injunction "thwarts their ability to effectively operate the Jail and constrains their ability to nimbly respond" to the pandemic. *See* Opening Br. at 50. To the contrary, the District Court found that "although Defendants may have a policy to comply with the CDC Guidelines, actual compliance has been piecemeal and inadequate." ER 14. In short, then, the District Court found that Defendants were *not* "effectively operat[ing]" and "nimbly respond[ing]" to COVID-19 when it issued the preliminary injunction. The District Court's preliminary injunction order was logical, supported by the record, and well within the scope of its discretion. *See Brown v. Plata*, 563 U.S. 493, 511 (2011) (courts "may not allow constitutional violations to continue

52

simply because a remedy would involve intrusion into the realm of prison administration.").

## VI. Defendants Have Abandoned Their Appeal of the District Court's Denial of Their *Ex Parte* Application to Dissolve the Preliminary Injunction

Defendants have abandoned their appeal of the denial of their *ex parte* application to dissolve the injunction. Defendants initially noticed two separate appeals, the first appealing the May 26, 2020 grant of the preliminary injunction, the second appealing the June 26, 2020 denial of their *ex parte* application to dissolve the preliminary injunction. ER 22-31; Supp. ER 176-179. Defendants then filed a stipulated motion to consolidate the appeals under one case and filed a single opening brief under both appellate case numbers. Case No. 20-55568, Dkt.; Case No. 20-55668, Dkt. 12. Defendant's opening brief, however, argues only that the District Court erred by granting a preliminary injunction–and, wholly improperly– that an injunction is currently unwarranted. Dkt. 12 at 5 (statement of issues); *Zepeda v. U.S. I.M.S.,* 753 F.2d 719 (9th Cir. 1983) (scope of appeal of preliminary injunction limited to facts presented to the district court). Defendants have waived their appeal of the District Court's denial of their motion to dissolve the injunction by not listing it in the statement of issues and not including any argument or authority specifically supporting their challenge in their opening brief. *See e.g., Monzon v. City of Murrieta,* 966 F.3d 946 (9th Cir. 2020) (appellants waived appellate review by not "specifically and distinctly" briefing legal issues); *Entertainment Research*

*Grp., Inc. v. Genesis Creative Grp., Inc.* 122 F.3d 1211 (9th Cir 1997) (Appellate court will "not consider any claims that were not actually argued in [Appellant's] opening brief.") ; *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727 (9th Cir. 1986) ("The Court of Appeals will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief . . . .").

Defendants' brief makes only cursory reference to the District Court's denial of their *ex parte* application to dissolve. *See* Dkt. 12 at 42 (asserting in passing, and without explanation, that the denial of the *ex parte* application to dissolve was "punitive," and citing a wholly unrelated case about first amendment rights). Defendants never address the District Court's central reasoning for the denial: that the motion was premature and based only on Defendants' own one-sided representations of their own declarants, that their declarants had sworn they were already undertaking the preventative measures, and that the court could better assess such representations after expedited discovery. ER 33-34. Nor do Defendants address the District Court's conclusion that even if intra-Jail transmission had temporarily slowed, risk for infection at the Jail remained without the ordered preventative measures because, as Defendants conceded, new bookings would continuously introduce new cases to the Jail. *Id.*

If this Court concluded that this limited reference was sufficient to preserve appellate review, it should affirm the District Court's ruling that the motion was

54

premature. Defendants have fallen far short of their burden of showing that the new facts were sufficient to warrant dissolution of the preliminary injunction before expedited discovery was conducted. *Karnoski v. Trump*, 926 F.3d 1180 (9th Cir. 2019) (internal citation omitted).

## VII. Defendants' Federalism Arguments Are Misplaced

There is no doubt that it is the role of the federal courts to enjoin constitutional violations, including when the subject of the injunction is a state agency or elected official entitled to respect and deference in conducting its affairs. *Armstrong v. Davis*, 275 F.3d 849, 879 (9th Cir. 2001) (affirming an injunction of a state prison board's unconstitutional activities); *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1237 (9th Cir. 2001) (finding standing where a plaintiff sought an injunction of county sheriff's use of stun belts, while recognizing federalism concerns). While federal courts should avoid unnecessary intrusion into the day-to-day management of jails and prisons, *see Rizzo v. Goode*, 423 U.S. 362, 379 (1976), it is proper, and necessary, for the judiciary to vindicate the law where it has been violated, *see Coolidge v. New Hampshire*, 403 U.S. 443, 453 (1971) ("It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.").

Defendants argue that the District Court's preliminary injunction interfered with their ability to be flexible as jail administrators, claiming that they needed a

"permission slip" from the District Court to make changes in the Jail. Opening Br. at 51. But the preliminary injunction created a floor—not a ceiling—for the administration of the Jail. Nothing stopped Jail administrators from exceeding that floor. Indeed, the preliminary injunction only required them to take the basic steps to protect Plaintiffs that they initially claimed to be *already* taking.

Defendants would have the District Court shirk its essential function by suggesting that federal courts may not question the discretion of a state agency, a particularly grim argument during a once-in-a-century public health crisis. Defendants even characterize a basic transparency measure—the District Court's requirement that they file weekly reports to document COVID-19 testing and their compliance with the preliminary injunction—as "punitive" and suggest it involved improper interference with state and local decision-making. Dkt. 38 at 42. The District Court's order did not second-guess any decisions Defendants made; it asked them to report what they chose to do to comply with the original order. Under the preliminary injunction order, Defendants remained free to determine *how* they would address the crisis within the Jail, but required Defendants to take the minimal steps that have been demonstrated to help slow the transmission of COVID-19.

As the District Court recognized, "it is *always* in the public interest to prevent the violation of a party's constitutional rights." ER 19 (*citing Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)) (emphasis added). Citing to a detailed factual

record, the District Court found that injunctive relief was necessary because the Defendants violated Plaintiffs' constitutional rights. ER 14 (finding that the jail "lacks the ability" to control the infection). The District Court's order did not specify the precise means that Defendants must take to comply with the law, only that Defendants should implement the minimal measures necessary to protect Plaintiffs from serious illness. Defendants' federalism arguments are unavailing.

## CONCLUSION

This Court should affirm the District Court's Preliminary Injunction Order.

DATED: September 28, 2020 Respectfully submitted,

*/s/ Mitchell Kamin*
Mitchell Kamin (SBN 202788)
mkamin@cov.com
Aaron Lewis (SBN 284244)
alewis@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
Facsimile: (424) 332-4749

*/s/ Cassandra Stubbs*
Cassandra Stubbs (SBN 218849)
cstubbs@aclu.org
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
201 W. Main St., Suite 402
Durham, NC 27701
Telephone: (919) 682-5659
Facsimile: (919) 682-5961

*/s/ Stacey Grigsby*
Stacey Grigsby (D.C. Bar No. 491197)
sgrigsby@cov.com
Amia Trigg (SBN 282890)
atrigg@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 778-5906

*/s/ Carl Takei*
Carl Takei (SBN 256229)
ctakei@aclu.org
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 607-3300
Facsimile: (212) 607-3318

*/s/ Paul Hoffman*
Paul Hoffman (SBN 71244)
hoffpaul@aol.com
UNIVERSITY OF CALIFORNIA,
IRVINE SCHOOL OF LAW
CIVIL RIGHTS LITIGATION
CLINIC
401 E. Peltason Dr.,
Suite 1000, Irvine, CA 92687
Telephone: (949) 824-0066

*/s/ John Washington*
John Washington (SBN 31599)
jwashington@sshhlaw.com
SCHONBRUN, SEPLOW, HARRIS,
HOFFMAN & ZELDES LLP
11543 W. Olympic Blvd.
Los Angeles, CA 90064
(310) 399-7040

/s/ Zoe Brennan-Krohn
Zoe Brennan-Krohn (SBN 324912)
zbrennan-krohn@aclu.org
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
Disability Rights Program
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0769
Facsimile: (415) 255-1478

/s/ Peter Eliasberg
Peter Eliasberg (SBN 189110)
peliasberg@aclu.org
AMERICAN CIVIL LIBERTIES
FUND OF SOUTHERN
CALIFORNIA
1313 W 8th St
Los Angeles, CA 90017
Telephone: (213) 977-9500

*ATTORNEYS FOR PLAINTIFFS-APPELLEES*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 20-55568

I am the attorney or self-represented party.

**This brief contains** | 13,539 | **words**, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    ○ it is a joint brief submitted by separately represented parties;
    ○ a party or parties are filing a single brief in response to multiple briefs; or
    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [                    ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Mitchell Kamin | **Date** | Sep 28, 2020

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/2018*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 20-55568

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Plaintiffs' Response to Defendants' Opening Brief

**Signature** | s/ Mitchell Kamin     **Date** | Sep 28, 2020

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**                                                                 *Rev. 12/01/2018*